**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| ANDREW WILLEY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 20-CV-1736 |
| THE HARRIS COUNTY DISTRICT ATTORNEY, in her official capacity, | ) ) ) ) |
| Defendant. | ) ) ) ) |

**COMPLAINT**

1. Andrew Willey is a dedicated criminal-defense lawyer. He believes, based on his experiences representing criminal defendants and from his deeply held Christian faith, that he has a calling to protect the rights of people who are accused of crimes. For these reasons, he has undertaken, at personal expense and without compensation, several efforts to improve the indigent-defense system in Harris County. One of these efforts involves providing free representation to criminal defendants for the limited purpose of helping them seek to replace their overburdened and underperforming court-appointed defense lawyers with any other court-appointed counsel who has sufficient time to adequately represent them. Willey seeks an injunction preventing Texas's criminal statute prohibiting barratry from being used to prosecute him for engaging in this endeavor.

## Parties

2. Plaintiff Andrew Willey is a criminal-defense lawyer based in Houston, Texas, who practices primarily in Harris and Galveston Counties.

3. Willey is the founder of Restoring Justice, a 501(c)(3) nonprofit organization that seeks out people who have been neglected by their court-appointed defense lawyers and offers them free, high-quality, holistic criminal-defense representation. Through diligent fundraising efforts, Willey has been able to hire a full-time attorney and social worker to work at Restoring Justice to provide this representation.

4. Willey does significant *pro bono* work completely separate from his work building and supporting Restoring Justice. In this capacity, Willey works to secure a system of meaningful, independent oversight for private court-appointed attorneys (including himself) in Harris, Fort Bend, Chambers, and Galveston Counties.

5. Defendant is the elected district attorney of Harris County, Texas. She is sued in her official capacity as an enforcer of state law only.

## Jurisdiction and Venue

6. This court has federal-question jurisdiction under 28 U.S.C. § 1331.

7. Venue is proper because all parties reside in Harris County, Texas, which is also where the complained-of behavior occurred previously and will occur in the future.

## Willey Believes that Harris County Criminal District Courts Appoint Constitutionally Inadequate Lawyers to Represent Indigent Defendants

8. Willey's commitment to improving representation for indigent defendants in Harris County began in law school, when he represented indigent defendants on death row whose lawyers had severely neglected their cases.

9. Willey believes that many defendants in Harris County do not receive the representation to which they are entitled because their court-appointed attorneys have too many cases to devote the requisite time to all of their clients.

10. This belief is supported by a rigorous study conducted statewide in Texas by the Public Policy Research Institute and the Texas Indigent Defense Commission ("TIDC"), which found that the maximum number of court-appointed cases an attorney can competently represent in one year, if they devote the entirety of their practice to this work, ranges from 236 Class B Misdemeanors to 77 First Degree Felonies.

11. According to analysis by Restoring Justice that relies entirely on TIDC's reporting, 71% of Harris County defendants who were appointed private defense attorneys had a lawyer who exceeded these maximum case numbers in 2019.

12. In 2019, Willey received a complaint from a defendant that his court-appointed lawyer, Jerome Godinich, had done virtually nothing to represent him in over a year and that he wanted a new attorney.

13. This defendant had filed a motion to substitute Godinich, arguing that Godinich had done next to nothing in his case for more than a year.

14. Willey did not have the time to represent this defendant in his criminal case, but nonetheless agreed to represent this defendant on a limited-scope basis to try to secure new appointed counsel by filing a writ of mandamus with the Court of Appeals.

15. Willey began to research Godinich to prepare for filing this writ, and he learned that Godinich typifies the problems in the Harris County appointed-counsel system.

16. In 2018, Godinich was appointed by the Harris County Criminal Courts to more than *six hundred* felony cases. That is more than four times the recommended felony caseload for an attorney in a year.

17. For this work, Godinich earned $440,265 exclusively from appointed cases in Harris County.

18. Willey learned from publicly available sources that Godinich often provided abysmal representation.

19. In *three* cases, Willey learned, Godinich missed statutes of limitations to file papers in death-penalty cases. He used the same implausible excuse twice: "In at least one prior case," the U.S. District Court for the Southern District of Texas noted in a federal habeas-corpus case that Godinich defaulted, "Mr. Godinich offered the same excuse—that his attempt to file the petition after hours on the due date was frustrated by a broken time stamp machine."

20. In 2014, Willey learned, one of Godinich's clients, Juan Balderas, was sentenced to death after his case had been pending for *eight years* during which, according to Balderas's wife, "Godinich and his second chair attorney didn't even meet with [their client] until just before the trial and conducted almost no investigation."

3

21.     Willey filed a writ of mandamus on behalf of Godinich's client who had reached out to him. The writ was denied on procedural grounds unrelated to the quality of Godinich's representation. The defendant chose to fire Godinich and proceed pro se rather than allow Godinich to continue neglecting his case.

22.     After learning about many defendants whose court-appointed attorneys—like Godinich—are overburdened, Willey felt compelled to offer more systemic assistance to people whose lawyers clearly could not effectively represent their entire court-appointed caseload.

### **Willey Works to Improve the Lives of Indigent Criminal Defendants**

23.     In January 2020, Willey began to organize an effort to interview defendants represented by the most overloaded court-appointed attorneys and offer his personal, free services to represent them on a limited-scope basis. The scope of this representation was exclusively to file motions before the trial court to replace the overloaded attorney with a new court-appointed attorney whose caseload was at a manageable level and, if those motions were denied, seek appropriate review of such denials.

24.     Willey's ultimate goal for this project is both to ensure that individual defendants have court-appointed attorneys with the time to represent them effectively and to produce systemic change in how attorneys for indigent defendants are appointed and supervised.

25.     Willey concluded that Godinich's clients were likely to have particularly strong claims for replacement attorneys, and that those claims would be especially compelling, because Willey knew from public sources and from his experience with the defendant who contacted him directly that Godinich sometimes failed to do even the most basic work on his cases.

26.     So Willey decided that he would first seek to assist Godinich's clients through targeted motions to replace court-appointed counsel.

27. Because Godinich represents so many people, Willey asked for help from volunteer investigators to get in touch with prospective clients.

28. Willey created an intake questionnaire asking prospective clients about basic defense tasks Godinich had done or failed to do in their cases, and prepared a limited-scope retainer agreement that, if signed, would authorize Willey to file a motion to substitute counsel with different court-appointed counsel and seek mandamus if it is denied.

29. The limited-scope retainer agreement makes clear that all representation will be completely free of charge.

30. In February 2020, Willey's team contacted 22 people Godinich has been appointed to represent to ask them questions about their representation and whether they wanted help requesting a different court-appointed attorney.

31. Willey does not seek to be the replacement attorney appointed by the court to represent these defendants.[1]

32. Willey stands to gain no money whatsoever from his efforts to assist overlooked defendants in requesting a new lawyer who has time to meet with them and perform the basic tasks necessary for competent representation.

33. Willey's efforts involve learning about whether defendants are receiving any meaningful representation from their court-appointed attorneys, informing defendants of their right to adequate counsel, and offering to help them ask the trial court to appoint a lawyer who will meet their basic Sixth Amendment right to effective counsel.

---

[1] Willey also does not have the time or resources to represent any of these people *pro bono* for their criminal cases at this time.

34. Willey is motivated to undertake these efforts by his legal, political, and religious beliefs.

### Willey Is Threatened with Enforcement of the Texas Barratry Statute for His Work to Protect the Sixth Amendment Rights of Indigent Defendants.

35. In March of 2020, family members of two defendants interviewed by Willey's volunteers called Godinich to see if he was still representing them.

36. Godinich reported this to the judge in their cases, Judge Amy Martin of the 263rd District Court in Harris County.

37. When Judge Martin learned that Willey had contacted two of Godinich's clients, she promptly scheduled hearings to question the clients about their contacts with Willey.

38. Judge Martin did not alert Willey that these hearings were taking place.

39. At one of the hearings, after hearing from Godinich's client and his family, Judge Martin declared that:

> I can take whatever actions are at my disposal to make sure this [Willey's contact of the client] never happens again. But let me assure you, I personally chose the lawyers [appointed] to your case. They have met the highest qualifications to be qualified to handle capital murder cases. They will not be removed unless I find that there's a reason to do so. And no one should be coming to you soliciting information or even bothering you with any kinds of questions or allegations against your current attorneys. If those were valid allegations, they would be brought to me and I would take action. They are not, so they have not been. And I will ensure that [the client] still has the attorneys he has, who I know personally have been working on the case very diligently. I've seen them work in the courtroom.

40. Shortly after these hearings, Godinich subpoenaed Willey and his wife (who volunteers as Restoring Justice's accountant but has no involvement with Godinich's cases) to a hearing in the criminal case of Kermit Johnson, one of Godinich's clients, for April 8.

6

41. Willey and his wife, represented by separate counsel, moved to quash the subpoenas.

42. Texas's barratry law provides, in relevant part, that

> A person commits an offense if the person is an attorney . . .[,] and with the intent to obtain professional employment for the person or for another, provides or knowingly permits to be provided to an individual who has not sought the person's employment, legal representation, [or] advice . . . a written communication or a solicitation, including a solicitation in person or by telephone, that . . . concerns a specific matter and relates to legal representation and the person knows or reasonably should know that the person to whom the communication or solicitation is directed is represented by a lawyer in the matter.

### **The April 8 Hearing**

43. Willey's attorney met with Godinich and Judge Martin on April 6, 2020, prior to the hearing, to discuss the motion to quash.

44. At that meeting, Judge Martin said Willey's speech to prospective clients "could be criminal."

45. Godinich and Judge Martin then offered to quash the subpoena and cease any further attempts to compel testimony from Willey if he would agree to the entry of a sealed order forbidding him to (among other things) contact any prospective client whose case is pending in Judge Martin's court or any other court in Harris County.

46. Willey declined.

47. An Assistant District Attorney attended the April 8 hearing along with the parties to the April 6 meeting.

48. At the hearing, Judge Martin quashed the subpoena against Willey's wife, but upheld the subpoena against Willey and subpoenaed him for a second hearing on May 6, 2020.

### The May 6 Hearing

49. On May 6, Willey appeared virtually in court pursuant to a subpoena, with counsel.

50. Godinich had retained counsel to represent him, despite the fact that the subpoenas were facially for hearings in a criminal case where Godinich represents the defendant.

51. An Assistant District Attorney representing the State was also present for this hearing.

52. Judge Martin questioned Willey on the record about his interactions with Godinich's clients, including whether he had ceased communicating with Godinich's clients.

53. Willey's attorney represented to the Court that Willey has.

54. Next, Judge Martin sought assurance that Willey would never use any information from Godinich's clients in the future, which Willey declined to give.

55. In response, Judge Martin said "I think we have to have an emergency hearing."

56. Willey was subpoenaed for an emergency hearing on May 11, 2020, again in a criminal court docket setting before Judge Martin.

### The May 11 Hearing

57. On the morning of May 11, 2020, Godinich, through counsel, submitted to the Court, informally by email, a "Memorandum of Law [Attorney Sanctions]" styled "In re Andrew Joseph 'Drew' Willey."

58. That submission was, for all intents and purposes, an attempt at filing a motion for "this court [sic] to cite the Respondent to appear and to show cause why the Court should not sanction him under its inherent powers or 'take appropriate action' under Canon 3(D) of the Texas Code of Judicial Conduct."

59. Counsel for Godinich served copies of this court document on the Harris County District Attorney's Office, as well as to Willey's counsel.

8

60. On May 11, Willey appeared virtually, with counsel, as required by subpoena.

61. At this hearing, the Court inquired whether Willey had formed an attorney–client relationship with one of Godinich's clients.

62. Through counsel, Willey declined to answer such questions based on attorney–client privilege, attorney work-product doctrine, and the Fifth Amendment.

63. The Court responded to Willey's intention to assertion of the Fifth Amendment privilege by saying "that makes all the sense in the world to me."

64. The Court swore in the defendant in the underlying matter, and asked him whether there was an attorney–client relationship between Willey and the defendant. The defendant said there was not.

65. The Court then found that any attorney–client privilege was waived and ordered Willey to turn over anything Johnson signed that is in Willey's possession, as well as anything kept in any file that Willey maintains for that defendant.

66. Willey did not object to providing Johnson with any documents related to him.

67. Godinich's lawyer then renewed his request for sanctions against Willey.

68. In response, Judge Martin indicated that she intended to issue an order to show cause why Willey should not be sanctioned in her court.

69. Judge Martin demanded that Willey agree that he would not contact Godinich's clients in the future, either personally or through any agent, including specifically Restoring Justice.

70. Willey, through his attorney, agreed not to contact Godinich's clients in the future personally or through any of his agents.

71. Judge Martin admonished Willey by saying that Willey's attorney should advise him that "[i]t is a very, very bad idea to continue to try and solicit business, whether paid or unpaid[,] from defendants he knows are represented by attorneys, particularly that have been appointed by the Court . . . ."

72. Judge Martin said that "[i]f I find out that this behavior continues, we will -- I will not be nearly so nice."

73. Willey fears that the Court meant that he would face criminal sanctions for speaking with defendants represented by court-appointed attorneys in the future.

74. Willey complied with the Court's order by turning over a questionnaire where the defendant had answered questions about whether his attorney had performed basic functions of representation.

### The Prospect of Enforcement Against Willey Has a Chilling Effect on His Speech

75. Willey wants to continue his work to improve representation for indigent defendants in Harris County.

76. Willey believes that many of the people most in need of assistance can be reached only by direct contact because they are in jail and have extremely limited access to information and support.

77. Willey plans to represent future defendants in actions to replace their overburdened court-appointed lawyers as part of a larger-scale strategy to improve the lives of indigent defendants in Harris County.

78. He has already taken concrete steps towards this plan, including identifying specific defendants who had overburdened attorneys whom he would like to reach out to and offer his services, recruiting and training interns to help collect background information, developing template motions, writing limited-scope representation agreements, researching methods of

appealing the denial of any such orders, and drafting template writs of mandamus to file in the event that his motions to substitute defense counsel are denied.

79. Willey has a demonstrated commitment to continuing this work. After Willey filed a motion to replace Godinich from one previous case, Godinich filed a bar complaint against Willey regarding a magazine article that describes Willey's work.[2] Willey did not stop pursuing his plans despite this threatened professional discipline.

80. Willey was still actively pursuing his reform strategy when he was threatened with criminal prosecution for talking to represented clients about their representation.

81. One district court judge has already demanded that he swear off any intention of pursuing this strategy to serve indigent defendants in Harris County.

82. Willey's plans are currently on hold due solely to the threat of being criminally prosecuted if that strategy violates the criminal barratry statute in Texas.

## Claim for Relief

### *Count One*: Violation of First Amendment Rights under 42 U.S.C. § 1983

83. Willey incorporates by reference paragraphs 1–82 of this Complaint.

84. Willey is being threatened with prosecution under Tex. Penal Code Ann § 38.12(d)(2)(B) for speaking with prospective clients to advise them of their legal rights and to pursue potential civil-rights litigation.

85. Willey is not speaking with prospective clients for the purpose of earning any money.

---

[2] The complaint was summarily dismissed as an "inquiry" for failure to state a violation of the Texas Disciplinary Rules of Professional Conduct. *See* Tex. Rules of Discip. Proc. 2.10(A); *also* 1.06(T) ("'Inquiry' means any written matter concerning attorney conduct received by the Office of the Chief Disciplinary Counsel that, even if true, does not allege Professional Misconduct or Disability.").

11

86. Section 38.12(d)(2)(B) violates the First Amendment as applied to Willey.

87. Willey, therefore, seeks an injunction forbidding prosecuting him for speaking with prospective clients when he does so without a purpose of pecuniary gain, and a declaratory judgment that he may do so without fear of sanction.

## **Prayer for Relief**

Plaintiff Andrew Willey respectfully requests:

- An injunction forbidding prosecuting him for communicating with prospective clients without a purpose of pecuniary gain;
- A declaratory judgment that prosecuting Willey for communicating with prospective clients without a purpose of pecuniary gain violates the First Amendment;
- An award of reasonable attorney's fees under 42 U.S.C. § 1988;
- And any other relief this Court considers appropriate.

Respectfully submitted,

*/s/ Charles Gerstein*
Charles Gerstein
*Attorney in Charge*
(S.D. Tex. Bar No. 2998395)
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, DC 20009
charlie@civilrightscorps.org
(202) 894-6128

*/s/ Nathan Fennell*
Nathan Fennell
(S.D. Tex. Bar No. 3547280)
The Texas Fair Defense Project
314 E Highland Mall Blvd, Suite 204
Austin, TX 78752
nfennell@fairdefense.org
(512) 637-5220