**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| ANDREW WILLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 20-CV-1736 |
| v. ) | |
| ) | |
| THE HARRIS COUNTY DISTRICT ) | |
| ATTORNEY, in her official capacity, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MOTION TO RECUSE DISTRICT JUDGE LYNN N. HUGHES**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...............................................................................................1

II.    BACKGROUND ................................................................................................2

III.   ARGUMENT .....................................................................................................5

      A.     Judge Hughes's Search Was Evidence of Extrajudicial Bias and Was Itself
           Extrajudicial ..............................................................................................6

      B.     Judge Hughes's Mistaken Concerns About Restoring Justice's Tax Status
           Dominated the August 3 Hearing ..............................................................8

      C.     An Objective Observer Would Perceive Bias...........................................8

IV.    CONCLUSION .................................................................................................10

i

## I.    INTRODUCTION

This case is about whether Texas's barratry statute, Tex. Penal Code Ann. § 38.12(d)(2)(B), is unconstitutional as applied to attorneys who solicit clients for purposes other than pecuniary gain. Plaintiff Andrew Willey filed this suit because he is an attorney who, in his private, individual practice solicited clients for purposes other than pecuniary gain and who avers an intent to do so in the future. Defendant Harris County District Attorney concedes, as she must, that Willey meets the irreparable-harm standard for a preliminary injunction, that he has standing to sue, and that Section 38.12(d)(2)(B) is unconstitutional as applied to attorneys soliciting for non-pecuniary purposes unless it survives strict scrutiny. The only question before the Court is, therefore, whether that statute survives strict scrutiny.

At an initial pretrial conference and hearing on Willey's motion for a preliminary injunction, U.S. District Judge Lynn N. Hughes did not address that question. Instead, he questioned Willey's counsel about the tax compliance of a third-party nonprofit, Restoring Justice, of which Willey is founder and C.E.O. Judge Hughes had evidently researched whether Willey's nonprofit had problems with the Internal Revenue Service; found himself on the website of a different non-profit, *Restore* Justice, which has a similar name and indeed had problems with the IRS; confronted Willey's counsel about those problems; and indicated that he was "a little troubled [that] Mr. Willey . . . is also CEO of a defunct charity." (Transcript at 19.)[1] After Willey's counsel explained that Judge Hughes had visited the website of the wrong nonprofit, Judge Hughes nonetheless indicated that he *still* had concerns about Willey's nonprofit's tax status. That status has no relevance to the issues before the court.

---

[1] Restoring Justice is currently an active, compliant, tax-deductible public charity. *See* IRS, *Tax-Exempt Organization Search*, https://apps.irs.gov/app/eos/ (search: EIN 81-3279488) (listing Restoring Justice, of Houston, Texas, as public charity currently eligible for tax-deductible contributions) (last accessed August 6, 2020, 11:02 AM Central Time).

Willey respectfully moves for the recusal of Judge Hughes because his extrajudicial internet search for negative information on Willey's tax status—and his continued suspicion that Willey ran afoul of the IRS even after learning that this information came from the website of an entirely different organization—is such that "his impartiality might reasonably be questioned." 28 U.S.C. § 455.[2] Regardless of whether Judge Hughes is in fact biased against Willey—which Willey cannot know, and does not allege—an objective observer would conclude that an appearance of bias exists. Judge Hughes could have found this faulty information only if he directly searched for it outside of the record prior to the hearing. Appellate courts have specifically held that where a district judge seeks extraneous information about a party and relies on that information to the party's apparent detriment he must be removed from the proceedings. *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995). Because a reasonable observer would question the impartiality of a judge who affirmatively seeks out irrelevant, potentially prejudicial information about parties before the court, and because that information itself is an extrajudicial source of bias that appears to continue to influence Judge Hughes's consideration of this case, Judge Hughes should recuse himself from further participation in this matter.

## II.    BACKGROUND

On August 3, 2020, undersigned counsel, Charles Gerstein, appeared before Judge Hughes on behalf of Willey. The first question that Judge Hughes asked Gerstein at the August 3 hearing was "[w]hy is the suit brought in Willey's name rather than the name of the charity that he purports to run?" (Transcript at 3.) Gerstein responded that Willey was acting in his private capacity when the events in the Complaint occurred and that this is why Willey, and Willey alone, filed suit. *Id.* at 3–4. Nonetheless, Judge Hughes asked Gerstein, "[w]ould it surprise you to learn that the charity

---

[2] Defendant opposes this Motion.

has lost its standing with the IRS?" *Id.* at 4. "According to the charity's own website," Judge Hughes said, "it says they lost in, I think it's 2018, and they are in negotiations with the IRS to resume. Perhaps that's why Mr. Willey is bringing it in his own name." *Id.* Judge Hughes asked whether the charity had anything to do with this case and Gerstein confirmed that it did not. *Id.*

Roughly five minutes later, Judge Hughes raised the IRS issue again. After Gerstein again clarified that Restoring Justice, Willey's organization, was not a party to this suit, Judge Hughes said, "[s]o you understand the charity says, the IRS automatically revokes tax exempt status for any nonprofit organizations missing three consecutive years of tax filings. So the problem apparently was not they didn't have any charity. It was they didn't have any reports. You know how understanding the IRS is." *Id.* at 7–8. Gerstein explained that he knew of no such IRS issues related to Willey's organization. In a further attempt to clarify that Willey was the only plaintiff before the court, Judge Hughes asked Gerstein: "there's Restore Justice Foundation, Pre[cious] Blood Ministry of Reconciliation, Restore Justice Illinois. None of those is here, right? We just— we just have Mr. Willey?" *Id.* at 8.[3] Gerstein confirmed that "[t]he only parties before the Court are Mr. Willey and [the] District Attorney . . . ." *Id.*

At the end of the roughly forty-minute hearing, Judge Hughes raised the IRS issue a third time: "I am a little troubled by Mr. Willey, being a lone wolf now, is also CEO of a defunct charity . . . shall I just assume that any cases he gets while he's acting alone will be handled through the charity?" *Id.* at 19. Gerstein responded that, to his knowledge, Willey's organization was not defunct in any way. *Id.* To this Judge Hughes replied "counsel, just go on their website and there is a long explanation about their tax problems. They lost their standing with the IRS, which is not

---

[3] None of these organizations has any relationship with or connection to Restoring Justice, Willey's organization.

important, perhaps, to the people doing the work, but it is to the people funding it." *Id.* at 19. Gerstein explained that there was no such notice on Restoring Justice's website and spelled out the name of the correct website for Judge Hughes. *Id.* at 20. After clarifying that he "didn't submit any of this in the record, and do[es] not believe it is relevant to the case," Gerstein read from the Restoring Justice website: "'Restoring Justice is a 501(c)(3) nonprofit organization. All donations are tax deductible to the extent allowed by law.'" *Id.* Judge Hughes responded, "Well there is a Restorejustice.org," which is the website of the Illinois-based organization. *See* Restore Justice, https://restorejustice.org/ (last accessed August 7, 2020, at 12:01 PM Central Time). Gerstein explained "that might be the issue . . . . I think that is a different organization." (Transcript at 20.)

This clarification did not extinguish Judge Hughes's suspicion that Willey was in trouble with the IRS. "Well," Judges Hughes said, "the statement that they are fully deductible to the extent of the law doesn't answer the question of are they deductible under the extent of the law which includes an IRS requirement that you file these annual reports?" *Id.*

The notice of *Restore* Justice's tax problems, which was published on Restore Justice's blog more than two years ago, is not easy to find. *See* Restore Justice, *Non-profit status information*, https://restorejustice.org/restore-justice-foundation-non-profit-status-information/ (September 19, 2018). To the best of undersigned counsel's knowledge, there are only two ordinary ways for someone to find the blog post in which Restore Justice announced its troubles with the IRS. The first way is to navigate to Restore Justice's website, restorejustice.com; click the "Commentary" tab in the top banner, which has no indication that the commentary would relate to IRS compliance; click through four pages of old blog posts, none of which contain information about IRS compliance, and many of which discuss criminal-justice reform in Illinois; and, finally,

4

land on the 2018 blog post regarding Restore Justice's tax problems.[4] *See generally* Restore

Justice, restorejustice.org (last accessed August 6, 2020, 10:02 AM Central Time). The other way

to find this blog post is to search for "Restore Justice IRS": the post is the first result of such a

search. *See* Google, google.com (search: "Restore Justice IRS") (returning

https://restorejustice.org/restore-justice-foundation-non-profit-status-information/). Accordingly,

an objective observer would be left with the firm conclusion that Judge Hughes was specifically

searching for extraneous information about Restoring Justice prior to the hearing in this case, and

an objective observer would likely conclude that he was searching for potentially *negative*

information about Restoring Justice's tax compliance.

## III.   ARGUMENT

Under 28 U.S.C. § 455(a), "[a]ny . . . judge . . . of the United States shall disqualify himself

in any proceeding in which his impartiality might reasonably be questioned," *id.* § (a). Subsection

(a) of Section 455 was added to the federal recusal statute in 1974 to serve as "a 'catchall' recusal

provision, covering both 'interest or relationship' and 'bias or prejudice' grounds—but requiring

them all to be evaluated on an objective basis, so that what matters is not the *reality* of bias or

prejudice but its *appearance*." *Liteky v. United States*, 510 U.S. 540, 548 (1994) (emphases added);

*Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003) ("These provisions afford separate,

though overlapping, grounds for recusal. Subsection (b)(1) pertains to specific instances of

conflicts of interest, while subsection (a) deals with the appearance of partiality generally.").

"Quite simply and quite universally," the Supreme Court has explained, "recusal [i]s required

whenever 'impartiality might reasonably be questioned.'" *Liteky,* 510 U.S. at 548. *See also United*

---

[4] Other possible internet searches, such as "Restore Justice non-profit," "Restore Justice charity," and "Restore Justice" return on the first page of results only Restore Justice's homepage. *See* Google, google.com (search: "Restore Justice non-profit," "Restore Justice charity," and "Restore Justice") (last accessed August 7, 2020, 12:05 PM Central Time) (returning restorejustice.org).

*States v. Bremers*, 195 F.3d 221, 226 (5th Cir. 1999) ("[R]ecusal may well be required even where no actual partiality exists."). Plaintiffs seeking recusal under §455 "must (1) demonstrate that the alleged comment, action, or circumstance was of 'extrajudicial' origin, (2) place the offending event into the context of the entire trial, and (3) do so by an 'objective' observer's standard." *Andrade*, 338 F.3d at 455.

Judge Hughes's search for and use of information about Restore Justice's troubles with the IRS satisfies each of these three prongs. First, the fact that Judge Hughes engaged in an extra-judicial search for potentially damaging information about a third party with a relationship to a party is evidence of extrajudicial bias against that party; and the information itself is both extrajudicial and has created the appearance of bias. Second, in the context of the proceedings before the court, the issue of Restoring Justice's tax compliance subsumed the questions properly before the court. And, finally, an objective observer would conclude that the appearance of bias exists. Judge Hughes should recuse himself from this case.

### A.    Judge Hughes's Search Was Evidence of Extrajudicial Bias and Was Itself Extrajudicial

Parties seeking recusal must ordinarily show that "the alleged comment, action, or circumstance was of 'extrajudicial' origin." *Andrade*, 338 F.3d at 455. Here, there are two independently sufficient sources of apparent bias and both are of extrajudicial origin.

First, Judge Hughes's in-depth search for information about Restoring Justice or his specific search for negative information about Restoring Justice would appear, to an objective observer, as evidence of an unknown source of bias. From an objective perspective, Judge Hughes could have acquired this information only by scrolling through two years' worth of irrelevant blog posts on an Illinois non-profit's website or by searching specifically for that non-profit's IRS status. Either course would appear, to an objective observer, as evidence of extraneous bias.

6

Although Restoring Justice is not a party to this case, Willey—as explained in the Complaint, ¶ 3—was the non-profit's founder and is currently its CEO. And so, a reasonable observer would conclude, Judge Hughes was specifically searching for information that may call into question Willey's compliance with unrelated legal obligations. This is evidence of the appearance of an extrajudicial source of bias.

Second, the information Judge Hughes acquired in this search is itself an extrajudicial source of apparent bias. In *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995), the D.C. Circuit concluded that a district judge manifested evidence of apparent bias when he made comments on the record inquiring about facts outside of the complaint that he evidently acquired from a book. *Id.* "We are deeply troubled by several aspects of the proceedings in district court," the Circuit wrote. *Id.*

> [A] review of the transcripts in this case makes it patently obvious that the reason for the judge's broad-ranging inquiries was his acceptance of the accusations in the book . . . . After reviewing the transcripts and the district judge's opinion, an objective observer is left with the overall impression that the district judge had formed an opinion about [a party]'s practices based on [the book], and therefore [made decisions adverse to a party].

*Id.* As a result, the circuit court concluded, the fact that the district judge investigated allegations beyond the complaint and relied on them in court proceedings required his recusal. *Id.*

Judges Hughes evidenced skepticism at the hearing that Restoring Justice was a legitimate nonprofit; explained that his skepticism derived from an extrajudicial source ("counsel, just go on their website," Transcript at 19); and made specific comments, *after* Gerstein explained that Judge Hughes had investigated the wrong nonprofit's website, that would cause a reasonable observer to conclude that he *remained* skeptical ("the statement that they are fully deductible to the extent of the law doesn't answer the question of are they deductible under the extent of the law which includes an IRS requirement that you file these annual reports? So that's one of those universal

phrases," *id.* at 20). As in *Microsoft*, Judge Hughes's views were formed from an independent investigation conducted beyond the record in the case and resulted in him appearing to "form[] an opinion about . . . practices based" on extraneous sources. *Microsoft*, 56 F.3d at 1463. Because a reasonable observer would conclude that Judge Hughes had viewed extrajudicial information that was not relevant to any issue before the Court, and that the information had influenced his decision of the matter at bar, he should recuse himself from this matter.

### B.   Judge Hughes's Mistaken Concerns About Restoring Justice's Tax Status Dominated the August 3 Hearing

Parties seeking recusal must next "place the offending event into the context of the entire trial." *Andrade*, 338 F.3d at 455. The Fifth Circuit has elsewhere noted that a court's analysis of claims brought under §455 "should entail a careful consideration of context, that is, the entire course of judicial proceedings, rather than isolated incidents." *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 484 (5th Cir. 2003). Judge Hughes's mistaken invocation of Restoring Justice's tax troubles was not an isolated incident and, compared to the straightforward issue of law before the court, completely dominated the proceedings. The short August 3 hearing—which was scheduled as an initial pretrial conference and a hearing on Willey's motion for a preliminary injunction, Docs. 7, 16—began and ended with pointed questioning about Restoring Justice's supposed infractions and their effect on Willey's behavior; in between these exchanges, Judge Hughes engaged Gerstein in an additional colloquy about Restoring Justice and the IRS. Because Judge Hughes allowed mistaken concerns about Restoring Justice's tax status to dominate the August 3 hearing, concerns about apparent bias do not stem from an isolated incident, and thus the second prong of the *Andrade* test is satisfied.

### C.   An Objective Observer Would Perceive Bias

Finally, parties seeking recusal must demonstrate bias as it would be perceived by an

"'objective' observer's standard." *Andrade*, 338 F.3d at 455. Both possible explanations for how Judge Hughes found Restore Justice's blog post (via a thorough comb of Restore Justice's website or via a direct search for "Restore Justice IRS") appear to explain searches for information that reflects negatively on Drew Willey and Restoring Justice. And even if Judge Hughes acquired the information in question through some other, entirely coincidental means—which Willey need not, and does not, argue is impossible—an objective observer would question whether he was in fact searching specifically for that information, and either possible search would disturb an objective observer. This faulty information was itself prejudicial, extrajudicial material that created a bias evidenced in court, and the fact that Judge Hughes was actively looking for this information in the first place is evidence of apparent bias that predates his actual reading of the blog post from Restore Justice's website.

An objective observer would also be troubled by Judge Hughes's apparent reaction to the fact that his information about Restoring Justice was incorrect. In *Liteky*, the Supreme Court established that judicial remarks in court "*will*" establish grounds for recusal if "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555 (emphasis in original). Judge Hughes, confronted with the fact that his information about Restoring Justice's tax status came from the website of an entirely different and unrelated organization, and with the unrebutted argument that tax status was irrelevant to the questions before the court, still questioned Restoring Justice's compliance. Judge Hughes said that evidence of Restoring Justice's actual tax status, taken from its actual website, "doesn't answer the question" of whether Restoring Justice had filed its annual tax reports as required by the IRS. (Transcript at 20.) Regardless of whether Judge Hughes is in fact biased against Willey—which Willey cannot know, and does not allege—an objective observer would conclude that an appearance of bias

9

exists, and Judge Hughes should accordingly recuse himself from further proceedings in this case.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff Andrew Willey respectfully requests that United States

District Judge Lynn N. Hughes recuse himself from this matter.

Respectfully submitted,

*/s/ Charles Gerstein*
Charles Gerstein
*Attorney in Charge*
(S.D. Tex. Bar No. 2998395)
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, DC 20009
charlie@civilrightscorps.org
(202) 894-6128

*/s/ Nathan Fennell*
Nathan Fennell
(S.D. Tex. Bar No. 3547280)
Texas Fair Defense Project
314 E Highland Mall Blvd, Suite 204
Austin, TX 78752
nfennell@fairdefense.org
(512) 637-5220